PHILLIP A. TALBERT
Acting United States Attorney
JEFFREY J. LODGE
Assistant United States Attorney
2500 Tulare Street, Suite 4401
Fresno, California 93721
Telephone: (559) 497-4000
Email: Jeffrey.lodge@usdoj.gov

Attorneys for the United States Department of Education

# UNITED STATES BANKRUPTCY COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>LISA SAHAR,<br><br>                Debtor.<br> | Case No. 20-20726--E-7<br>Chapter 7 |
| LISA SAHAR,<br><br>                Plaintiff,<br>v.<br><br>U.S. DEPARTMENT OF EDUCATION, et al.<br><br>                Defendants. | Adv. Proceeding No. 20-02123-E<br><br>**UNITED STATES' MOTION FOR SUMMARY JUDGMENT**<br><br>DC No. USA-1<br><br>Date:   July 1, 2021<br>Time:  11:00 A.M.<br>Place:  Dept. E, Ctrm. 33, 6th Floor<br>          501 I Street, Sacramento CA<br>          Hon. Ronald H. Sargis |

This is an action to determine the dischargeability of student loans from the United States under 11 U.S.C. § 523(a)(8). The Plaintiff, Lisa Sahar ("Sahar"), cannot carry her burden of proof to rebut the presumption that the student loans are not dischargeable. Sahar is 49, well-educated, and currently employed as a teacher. She is divorced and the Family Court has imputed income to her in the amount of $4,831 per month and ordered her ex-husband, a plastic surgeon, to pay child support and spousal support totaling approximately $4,600 per month. She has no medical conditions that affect her ability

to work. Prior to filing bankruptcy, she participated in an Income Based Repayment plan but refuses to do so now. As a teacher, she may also be eligible for Public Service Loan Forgiveness. Under these circumstances, Sahar is unable to show undue hardship to discharge her student loans under 11 U.S.C. § 523(a)(8) and there are no triable issues of fact; therefore, summary judgment should be granted in favor of the United States Department of Education.

## STATEMENT OF FACTS

Sahar is 49 years old. Lodge Decl. Ex. 1, Transcript of Deposition of Lisa Sahar ("Sahar Depo."), 6:21-22. She is divorced with three children ages 18,16, and 14. *Id*. at 10:23-11:7. She has a Bachelor of Science and a Doctor of Chiropractic degree. *Id*. at 18:9-25. In the past, she was a licensed chiropractor. *Id*. She is currently employed as a fully certified teacher. *Id*. at 35:10-16. She has no medical conditions that affect her ability to work. *Id*. at 49:10-24. The Family Court has issued a *Gavron* order advising her that under Family Code section 4330, she is required to make reasonable efforts to provide family support by obtaining gainful employment and imputed monthly income to her of $4,831. *Id*. at 62:13-18. The Family Court further ordered her ex-husband, a plastic surgeon, to pay support of approximately $4,600 per month. *Id*. at 58:3-9. This includes spousal support of $1,475. *Id*. at 59:14-23.[1] The marriage lasted 13 years which is long-term marriage for purposes of permanent spousal support. *Id*. at 58:22-25. This support could increase. *Id*. at 70:9-15. Thus, Sahar has income potential of approximately $9,431 per month to pay her Schedule J expenses of $5,121. *See* Doc. 1, Schedule J.

Sahar incurred approximately $60,000 in student loans in 1996-1999 for chiropractic school. Sahar Depo., 72:1-73:5. She decided to stop paying on the loans while her husband was in medical fellowship at Stanford University and, as a result, the debt ballooned. *Id.* Prior to filing bankruptcy, she participated in an Income Based Repayment plan ("IBR") but refuses to do so now. *Id*. at 70:16-71:7. Under IBR, a borrower's income is reviewed annually, adjusted accordingly and, after 25 years, the debt is discharged. *Id*. at 83:16-84:3; 34 C.F.R. § 682.215. As a teacher, she may also be eligible for Public Service Loan Forgiveness. Sahar Depo., 84:4-12. She received a bankruptcy discharge on December 17, 2020, and presumably has no non-student loan debts. Doc. 17. She claimed that the reason she

---

[1] She received $69,700 in child/spousal support in 2019 according to the Statement of Financial Affairs, No. 5. Doc. 1.

UNITED STATES' MOTION FOR SUMMARY JUDGMENT 2

desires a discharge of her student loans is to protect her children from liability. *Id*. at 85:17-86:5. However, student loans are discharged upon death. 34 C.F.R. § 685.212.

## LEGAL STANDARDS

### A.　**Summary Judgment**.

Summary judgment is appropriate when "no genuine dispute as to any material fact" requires trial. Fed. R. Civ. P. 56(a). When considering a summary judgment motion, the Court must examine all the evidence in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). If the moving party does not bear the burden of proof at trial, it may discharge the burden of showing that no genuine issue of material fact remains by demonstrating that "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The moving party is entitled to summary judgment if the non-movant fails to make a sufficient showing of an element of its case with respect to which it has the burden of proof. *Id*. at 323; *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102, 1106 (9th Cir. 2000).

Once the moving party meets the requirements of Rule 56, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party may not "rest on mere allegations or denials of his pleadings." *Anderson*, 477 U.S. at 259. Instead, the non-moving party must go beyond the pleadings to designate specific facts showing the existence of genuine issues for trial. *Celotex*, 477 U.S. at 324-25.

A genuine issue exists only when a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 247-49. To demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 586-87; see *Foster v. Arcata Associates, Inc.*, 772 F.2d 1453, 1459 (9th Cir. 1985) (the role of summary judgment in discrimination cases "is to enable the district courts to identify meritless suits and dispense with them short of trial."). "[T]he moving party is entitled to a judgment as a matter of law" when the nonmoving party fails to make a sufficient showing on an essential element of its case. *Celotex*, 477 U.S. at 323; *Nissan Fire & Marine*, 210 F.3d at 1102.

### B. Student Loans Are Presumed To Be Nondischargeable.

Generally, student loan obligations are presumed to be nondischargeable in bankruptcy pursuant to 11 U.S.C. § 523(a)(8). Section 523(a)(8)(a) provides:

> A discharge under Section 727 . . ., does not discharge an individual debtor from any debt -- unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents, for (i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend.

Although "undue hardship" is not defined in the Bankruptcy Code, the Ninth Circuit has recognized that "[t]he existence of the adjective 'undue' indicates that Congress viewed garden-variety hardship as insufficient excuse for a discharge of student loans . . ." *United Student Aid Funds v. Pena* (*In re Pena*), 155 F.3d 1108, 1111 (9th Cir. 1998) (quoting *In re Brunner*, 46 B.R. 752, 753 (S.D.N.Y. 1985), (aff'd, *Brunner v. New York State Higher Education Services Corp.*, 831 F.2d 395 (2d Cir. 1987)).

To determine if excepting student loans from discharge will create an undue hardship on a debtor, the Ninth Circuit has adopted the three-part test established by the Second Circuit in *Brunner*. *See Pena*, 155 F.3d at 1112; *Rifino v. United States* (*In re Rifino*), 245 F.3d 1083, 1086 (9th Cir. 2001). To obtain a discharge of a student loan obligation, the debtor must prove:

(1) the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans;

(2) additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and

(3) the debtor has made good faith efforts to repay the loans.

*Brunner*, 831 F.2d at 396. Under this test, the burden of proving undue hardship is on the debtor, and the debtor must prove all three elements before discharge can be granted. *Nys v. Educ. Credit Mgmt. Corp.* (*In re Nys*), 308 B.R. 436, 441–42 (9th Cir. BAP 2004), *aff'd*, 446 F.3d 938 (9th Cir. 2006). If the debtor fails to prove any one of the three prongs then the debt will not be discharged. *Id.*; *Shells v. U.S. Dept. Education*, 530 B.R. 758 (Bankr. E.D. Cal. 2015).

///

///

## DISCUSSION

### A. Student Loan Background

Congress has recognized that student loans are not like other unsecured debt and should not be discharged in bankruptcy absent showing undue hardship. 11 U.S.C. § 523(a)(8). Student loans are public assistance, designed to assist citizens with their education goals, without regard to credit history. *See* Higher Education Act of 1965, Pub. L. No. 89-329, 79 Stat. 1219 (1965) (codified as amended at 20 U.S.C. § 1071); 34 C.F.R. parts 682 and 685. Student loans are often provided as part of a package of assistance including grants, subsidized loans, parent loans, and work study. *See* Federal Student Aid, https://studentloans.gov (providing information to the public) (last visited June 6, 2019). Financial counseling occurs at several stages of the lending process. 34 C.F.R. § 685.304. Borrowers have access to their account information on the internet. *See* National Student Loan Data System, www.nslds.ed.gov (last visited June 6, 2019).

Repayment terms are generous and flexible. Student loans have interest below market rate. *See* 20 U.S.C. § 1087e(b) (interest rates fixed to treasury bills and subject to a cap). They have many other special features. They can be consolidated. 34 C.F.R. § 685.220. Borrowers have flexible repayment options, including: Graduated Repayment Plan, IBR, ICR, and Income-Sensitive Repayment Plan. *Id*. at § 685.208.[2] Repayment plans can be changed at any time. Deferment and forbearance are two ways for borrowers to temporarily postpone or lower loan payments while in school, in the military, experiencing financial hardship, or in certain other situations. *Id*. at §§ 685.204, 685.205. Other possibilities include loan forgiveness, cancellation, and discharge. Student loans are discharged at the death of the borrower, meaning that the debt is not paid by the estate of the borrower and does not burden the borrower's dependents. *Id*. at § 685.212.

---

[2] Income-contingent repayment plan (ICR). Under ICR, the monthly repayment amount is generally based on the total amount of the borrower's Direct Loans, family size, and adjusted gross income (including a spouse's income). *See* 34 C.F.R. § 685.208(k)(1). The amount of the payments cannot exceed 20 percent of a borrower's discretionary income computed on the basis of a set formula. Each year, Education recalculates a borrower's annual payment based on changes in the borrower's adjusted gross income, variable interest rate, income percentage factors in the annual notice, and poverty guidelines. A borrower makes payments until the loan is repaid in full or until the loan has been in repayment through the end of the ICR period. In general, the maximum repayment period is 25 years. 34 C.F.R. § 685.209(b)(1). At the end of the ICR period, Education cancels any unpaid portion of the loan. 34 C.F.R. § 685.209(b)(3). The ICP plan is available to a borrower based upon a showing of financial hardship.
    Income-based repayment plan (IBR). The IBR is similar to the ICR in that both cap the monthly payments at a percentage of discretionary income and Education forgives the remaining balance at the end of 25 years. 34 C.F.R. § 685.221.

It is critical to the operation of the student loan program that every borrower repay the American taxpayers for their financial support to the best of their ability. Congress' aim is to "tighten the gaps through which students could avoid loan repayment." See *Douglass v. Great Lakes Higher Educ. Servs. Corp.* (*In re Douglass*), 237 B.R. 652, 653 (Bankr. N.D. Ohio 1999) ("Historically, Congress has intentionally and progressively made it more difficult for student loan obligations to be discharged in bankruptcy cases."). Congress balanced the requirements of the student loan program, tax law, and bankruptcy to provide borrowers with options to pay an affordable amount toward their student loans, while leaving Education the ability to recover loans. This protects the student loan program for future generations.

### B. Sahar Cannot Meet Her Burden to Show Undue Hardship.

Sahar cannot show, by a preponderance of the evidence, that she is entitled to a discharge under the *Brunner* test. The Ninth Circuit has established a presumption that a debtor's financial condition will improve, stating:

> We do not presume that an individual's present inability to make loan payments will continue indefinitely. Rather, we hold that the burden is on the debtor to provide the court with additional circumstances, i.e., "circumstances, beyond the mere current inability to pay, that show that the inability to pay is likely to persist for a significant portion of the repayment period. The circumstances need be 'exceptional' only in the sense that they demonstrate insurmountable barriers to the debtors' financial recovery and ability to pay."…
>
> We will presume that the debtor's income will increase to a point where [the debtor] can make payments and maintain a minimal standard of living; however, the debtor may rebut that presumption with "additional circumstances" indicating that her income cannot reasonably be expected to increase and that her inability to make payments will likely persist throughout a substantial portion of the loan's repayment period.

*Nys*, 446 F.3d at 946 (citations omitted).

There are no disputed material facts. The undisputed facts show that Sahar cannot meet the burden of proof on any of the three prongs of the *Brunner* test. Sahar is 49 years old and has a Doctor of Chiropractic degree. She claims to have medical issues, but she has failed to support these claims with any expert medical evidence. She has three dependents and no other unsecured debts. She receives child support and spousal support from her ex-husband, a plastic surgeon. The Family Court has

imputed income to her of $4,831 per month. She willfully ran up her student loan debt and, prior to filing bankruptcy, was in an Income Based Repayment Plan that she dropped on the eve of filing. As a teacher, she may also be eligible for Public Service Loan Forgiveness. Under these circumstances, Sahar cannot carry her burden of proof, by a preponderance of the evidence, that she is entitled to an "undue hardship" discharge under the *Brunner* test.

1. **First Prong of the *Brunner* Test.**

Sahar cannot prove the first prong of the *Brunner* test, i.e., that she cannot maintain, based on current income and expenses, a "minimal" standard of living for herself if forced to repay her student loans. *Rifino*, 245 F.3d at 1088. To meet this requirement, Sahar will have to show more than simply tight finances. *Id*. (citation omitted). "In defining undue hardship, courts require more than temporary financial adversity, but typically stop short of utter hopelessness." *Id*. (citation omitted). The first prong of the *Brunner* test requires subtracting the debtor's average monthly expenses from her net monthly income. *Pena*, 155 F.3d at 1112-13. The method for calculating a debtor's average monthly expenses is a matter properly left to the discretion of the bankruptcy court. *Id*.

The Family Court has issued a Gavron order against Sahar advising her that under Family Code section 4330, she is required to make reasonable efforts to provide family support by obtaining gainful employment and imputed monthly income to her of $4,831. Sahar Depo. at 62:13-18. The Family Court further ordered her ex-husband, a plastic surgeon, to pay child support of approximately $4,600 per month. *Id*. at 58:3-9. Thus, Sahar has income potential of approximately $9,431 against her Schedule J expenses of $5,121. *See* Doc. 1. It is undisputed that she failed to apply for any of the available flexible repayment options or show what her student loan payments would be under such a plan. *Id*. at 70:16-71:7. A debtor cannot rely upon post-discharge circumstances to establish the first prong of the *Brunner* test. *See In re Zygarewicz*, 423 B.R. 909, 912-913 (E.D. Cal. 2010). Sahar cannot show that paying her student loans would prevent her from maintaining a minimal standard of living.

2. **Second Prong of the *Brunner* Test.**

Sahar is unable to prove the second prong of the *Brunner* test that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans. *Rifino*, 245 F.3d at 1088. This part of the test "is intended to effect 'the clear

congressional intent exhibited in Section 523(a)(8), to make the discharge of student loans more difficult than that of other nonexcepted debt,'" *Id*. at 1088–89 (citations omitted). The longevity of a debtor's state of poverty, without more, is insufficient proof of the additional circumstances necessary to prove the second *Brunner* element. *See Spence v. Educ. Credit Mgmt. Corp.* (*In re Spence*), 541 F.3d 538, 544 (4th Cir. 2008) (quoting *Educ. Credit Mgmt. Corp. v. Frushour* (*In re Frushour*), 433 F.3d 393, 401 (4th Cir. 2005)). Sahar must take advantage of a reasonable opportunity to improve her financial situation; the law does not allow her to choose not to make such an improvement. *Nys*, 446 F.3d at 946; see *Rifino*, 245 F.3d at 1089.

      Sahar has a reasonable opportunity to improve her financial condition. She is 49 and has a Doctorate degree. The Family Court has imputed monthly income to her of $4,831. Sahar Depo. at 62:13-18. She was in a long-term marriage to a plastic surgeon; thus she is entitled to spousal support that may increase with her ex-husband's ability to pay. She is currently employed as a teacher and there is no evidence that her medical condition prohibits her from earning an income. As a teacher, she may also be eligible for Public Service Loan Forgiveness. Her children are at or nearing the age of majority which will decrease her expenses. She is eligible for, among other things, a flexible repayment plan for her student loans that will adjust her payments consistent with her income. Thus, she cannot show that her state of affairs, to the extent they are negative, is likely to persist for a significant portion of the repayment period of the student loans. Sahar cannot purposely choose to live a lifestyle that prevents her from repaying her student loans. *Nys*, 446 F.3d at 946. The Ninth Circuit has established a presumption that a debtor's financial condition will improve. *Id*. Sahar cannot show additional circumstances that rebut the presumption that her income will increase. Also presumed is that her resultant financial recovery will afford her the ability to repay her student loans, the terms of which will reflect her income under a flexible repayment plan such as the IBR. *Id*.

      **3.**       **Third Prong of the *Brunner* Test.**

      Finally, Sahar cannot show that she has made good faith efforts to repay the student loans. *Brunner*, 831 F.2d at 396. The underlying purpose of this requirement is to "forestall students . . . from abusing the bankruptcy system." *Pena*, 155 F.3d at 1111. Good faith is "measured by the debtor's efforts to obtain employment, maximize income, and minimize expenses." *Educ. Credit Mgmt. Corp. v.*

*Mason* (*In re Mason*), 464 F.3d 878, 884 (9th Cir. 2006) (citation omitted). While not dispositive, courts will also consider a "debtor's effort—or lack thereof—to negotiate a repayment plan . . ." *Id*. (citation omitted); *Hedlund v. Educ. Res. Inst.* (*In re Hedlund*), 718 F.3d 848, 850, 851 (9th Cir. 2013); *Roth v. Educ. Credit Mgmt. Corp.* (*In re Roth*), 490 B.R. 908, ___ (9th Cir. BAP 2013); *Pa. Higher Educ. Assistance Agency v. Birrane* (*In re Birrane*), 287 B.R. 490, 499 (9th Cir. BAP 2002). This determination will require the bankruptcy court to consider the evidence regarding the student loan program, and whether the debtor, in good faith, considered consolidation options. *See Nys*, 446 F.3d 938.

Sahar borrowed funds from Education in 1995--1999 and stopped paying on them and allowed the debt to balloon. Sahar Depo., 72:1-73:5. She was in flexible repayment plan prior to filing bankruptcy but failed to re-certify and dropped out of the program. *Id*. at 70:16-71:7. In the Ninth Circuit, good faith requires significantly better efforts to pay than those exhibited by Sahar. *See Mason*, 464 F.3d 878 (finding lack of good faith, where debtor was unwilling to find a second part-time job and failed to diligently pursue ICR); *Birrane*, 287 B.R. 490 (finding lack of good faith, where debtor previously made some effort in negotiating repayment of her student debt but failed to pursue ICR option when it became available); compare *Roth*, 490 B.R. 908 (finding good faith, where debtor was 65 years old with a history of working multiple jobs and received TPD discharge for some of her loans). Under these circumstances, Sahar cannot show that she made a good faith effort to repay her student loans.

## **CONCLUSION**

On this basis, the United States requests that the Court grant summary judgment for the United States Department of Education and deny the discharge of Sahar's student loans.

Respectfully submitted,

Dated: May 24, 2021         PHILLIP A. TALBERT
                            Acting United States Attorney

                      By:   /s/Jeffrey J. Lodge
                            JEFFREY J. LODGE
                            Assistant U.S. Attorney
                            Attorneys for the United States

UNITED STATES' MOTION FOR SUMMARY JUDGMENT                                              9